**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DANNY TROY WILKERSON § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | NO. 3:08-cv-2004-B (AH) |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on November 10, 2008. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On November 1, 2005, plaintiff Danny Troy Wilkerson filed an application for disability insurance benefits and Supplemental Security Income ("SSI"), claiming disability due to fibromyalgia, pain in his shoulders, back, hips, and legs, and anxiety. (Administrative Record (hereinafter "Tr.") at 13, 69-70). He alleged a disability onset date of April 1, 2005. (Tr. at 12).

His claim was denied by the state agency initially and on reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on August 7, 2007, (Tr. 252-282), at which Plaintiff appeared with counsel and testified on his own behalf. The ALJ also received testimony from Michael Daniels, Wilkerson's roommate, and Barbara Dunlap, a vocational expert ("VE"). (Tr. 12, 272-282).

On December 18, 2007, the ALJ denied Plaintiff's request for benefits, finding that his medically determinable impairments did not prevent him from performing a full range of sedentary work. (Tr. 19). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on November 3, 2008, the Appeals Council denied his request. (Tr. 5-8). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed his federal complaint on November 10, 2008. Defendant filed an answer on January 7, 2009. On March 6, 2009, Plaintiff filed his brief, followed by Defendant's brief on April 29, 2009. Plaintiff filed a reply brief on May 11, 2009.

Standard of Review - Social Security Claims: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F. 2d 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir. 2005).

Discussion:    To prevail on a claim for disability insurance benefits, a claimant bears the

burden of establishing that he or she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505, 416.905(a). Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Under the first four steps, a claimant has the burden of proving that his disability prevents him from performing his past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, see 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence. *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the present case, the ALJ proceeded to step five, finding that, based on the Grid Rules, there are jobs that exist in significant numbers in the national economy that Wilkerson could perform. (Tr. 12). The ALJ therefore concluded he was not under a disability and denied his claim for benefits. (Tr. 20-21).

The ALJ noted that Wilkerson is 43 years old, has a high-school education, and past

3

relevant work as a contract carpenter. (Tr. 13). The ALJ found Plaintiff's testimony concerning his level of pain and functional limitations was not entirely credible, and was not supported by the clinical medical evidence. *Id*. He found Wilkerson's medically determinable impairments of severe fibromyalgia[1] and non-severe depression would prevent his return to work as a carpenter, but would not prevent him from performing the full range of sedentary work. (Tr. at 20).

Wilkerson alleges several errors by the ALJ. First he argues the ALJ failed to apply the correct legal standard in determining his mental impairments and their severity. Second he argues the ALJ erred by using the "grid rules" based on the nonexertional limitation caused by his depression. Third Wilkerson argues the ALJ did not properly consider the expert medical opinion of his treating physician, Dr. Deno Barroga, M.D. Fourth he argues the ALJ did not properly evaluate his credibility. Regarding Plaintiff's first argument, the Court finds the ALJ erred in his decision by failing to reference Plaintiff's abilities in four functional categories in his decision; however, this constituted harmless error, as will be discussed below. The remainder of the ALJ's decision is supported by substantial evidence in the record.

**First**, Wilkerson argues that the ALJ applied an incorrect legal standard for assessing the

---

[1] Fibromyalgia is a "rheumatic disorder characterized by chronic pain, tenderness, and stiffness of muscles, tendons, and ligaments, without detectable inflammation. *See Adams v. UNUM Life Ins. Co. of Am.*, No. Civ.A. H-04-2179, 2005 WL 2030840, at *13 (S.D. Tex. Aug. 23, 2005) (citation ommitted). "It is characterized by diffuse pain, tenderness, stiffness of joints, fatigue, cognitive and memory problems, and disturbed sleep." *Id*. (citation omitted). The condition is diagnosed through a patient's subjective reporting of pain and tenderness in at least eleven of eighteen "tender-point" sites, including "fibrous tissue or muscles of the neck, shoulder, chest, rib cage, lower back, thighs, knees, arms (elbows), and buttocks." *Id*. (citation omitted).

severity of his mental impairment.  The ALJ found that Plaintiff's mental impairment was "not severe" at step two in the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920.  In step two of the evaluation process, the Commissioner must determine whether the claimant has a "severe medically determinable physical or mental impairment...or a combination of impairments that is severe." § 416.920(a)(4)(ii).  If an impairment is neither found to be "severe" in and of itself, or in combination with other impairments, it is not considered during the latter stages of the sequential evaluation process.  § 416.920(a)(4)(ii), (c).

In *Stone v. Heckler* the court determined that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's work, irrespective of age, education or work experience."  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citation omitted); *see also Loza v. Apfel*, 219 F.3d 378, 391-92 (5th Cir. 2000) (noting that the circuit continues to apply the definition of "not severe" from *Stone*); SSR 85-28 (S.S.A. 1985) (acknowledging and noting agreement with *Stone*'s definition of "not severe").  When a claimant's alleged impairment is mental, rather than physical, the ALJ must evaluate the plaintiff's "pertinent symptoms, signs, and laboratory findings."  § 416.920a(b)(1).  If, after this review of the claimant's medical records, the ALJ determines that the plaintiff has an impairment, the ALJ is required to rate the degree of functional limitation resulting from the impairment.  § 416.920a(b)(2).  A plaintiff's degree of functional limitation is rated in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. § 416.920a(c)(3).  In applying this technique, "the written decision must incorporate the pertinent findings and conclusions based on the technique.  The decision must show the

significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) [activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.]." § 416.920a(e)(2).

In this case, the ALJ did not include the specific findings as to the degree of limitation in his decision. However, he did assess Plaintiff's depression, and his decision incorporates pertinent findings and conclusions, including Plaintiff's functional limitations as described by his treating and consultative doctors, and the functional limitations alleged by Plaintiff. The ALJ referenced *Stone v. Heckler* in his decision, stating that "there are no severe nonexertional limitations". (Tr. 20).

The ALJ discussed the September 24, 2007 psychological report prepared by psychologist Barbara S. Fletcher, Psy.D. at length. (Tr. 15-16, 209-216). Dr. Fletcher's report contains an analysis of the four functional areas. (Tr. 210). Regarding activities of daily living, she reports Plaintiff takes care of his personal hygiene independently five days per week, self-administers medication and manages appointments with the assistance of reminders from his roommate, spends most of his time lying in bed or on the computer, and is able to count money and make change. *Id*. Regarding social functioning, he lives with a friend, has contact with his family, and attends church. *Id*. Regarding his ability to complete tasks timely and appropriately, he arrived to his appointment with Dr. Fletcher on time and complied with requests made of him. *Id*. Dr. Fletcher reported no signs of deterioration and decompensation over the past 12 months. *Id*. Discussing Dr. Fletcher's report in his decision, the ALJ stated "[f]rankly, Dr. Fletcher's

6

evaluation simply did not show that [Wilkerson] had a severe mental impairment." (Tr. 16).

The ALJ noted that Wilkerson did not allege depression in his initial application for benefits, (Tr. 18, 69-70), and the Defendant notes Wilkerson did not mention his alleged depression at the ALJ's hearing. (Tr. 192-210, 252-282). The Defendant argues the ALJ was not under an obligation to consider a condition that was not alleged to be disabling, citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995), where the Court found "[b]ecause Leggett never raised the issue of mental impairment until this appeal, Leggett cannot say that he put his mental impairments before the ALJ." In *Leggett*, the Court noted the ALJ did not have evidence sufficient to suggest that a mental impairment exists, and that the record contained "some references to Leggett's anxiety, stress, and depression, but these comments were isolated and Leggett was not treated for them." *Leggett,* 67 F.3d at 566. Unlike Leggett, the record here contained evidence of Wilkerson's alleged depression sufficient for the ALJ to address the issue and determine the depression to be non-severe. However, the ALJ's decision did not include findings as to the degree of limitation in the four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

The ALJ assessed Wilkerson's depression and discussed his moderate limitations in ability to make complex work-related decisions and carry out complex work-related instructions. (Tr. 19, 214). He noted Wilkerson alleged he had a poor memory, was unable to concentrate, and could not read due to headaches; (Tr. 16, 256, 263); yet exhibited good memory and concentration effort and did not mention any pain while completing written intelligence tests at the consultative evaluation. (Tr. 16, 256, 263). Wilkerson underwent a consultative psychological evaluation by Dr. Fletcher, Psy.D., in September 2007, during which she

7

estimated his GAF score at 53 and assessed him with "major depressive disorder, recurrent, moderate, and, provisionally, a generalized anxiety disorder." (Tr. 15, 209-216). A GAF score between 51 and 60 indicates "moderate symptoms of moderate difficulty in social, occupational, or school functioning." *See* American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (DSM-IV), 34 (1994).

The ALJ found "Dr. Fletcher's evaluation simply did not show that the claimant had a severe mental impairment." (Tr. 16). While he failed to specifically describe the four functional areas in his decision, it is clear the ALJ agreed with the report completed by Dr. Fletcher regarding Plaintiff's performance in the four functional areas as described in the record, as he referenced her evaluation of Plaintiff throughout his decision. (Tr. 15-16, 18-19, 210). Additionally, the ALJ cited *Stone v. Heckler* in his decision, indicating the proper legal standard was applied. Because the ALJ cited *Stone* within his discussion of the severity requirement, this court may not assume that the ALJ applied an incorrect standard. *See Stone*, 752 F.2d at 1106.

The Court therefore finds the ALJ's failure to include specific findings in each of the four functional areas listed in 20 C.F.R. § 416.920a(c)(3) to constitute harmless error. "[E]rror consisting of violation of *a Regulation* may be disregarded when a reviewing court concludes it is harmless." *Bean v. Barnhart*, 454 F. Supp.2d 616, 621-22 (E.D.Tex. 2006) (emphasis in original) (citations omitted). Invoking the harmless error rule is appropriate when "remand would be an idle and useless formality." *Bean* at 622, citing *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 1430, 22 L.Ed.2d 709 (1969). In such cases, courts are not required to "convert judicial review of agency action into a ping-pong game." *Id*. *See also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir.2003) ("It is inconceivable that the ALJ would have

8

reached a different conclusion on this record....").

**Second**, Plaintiff argues the ALJ erred by using the "grid rules", because he did not factor in Plaintiff's alleged nonexertional limitation of depression.  Since the ALJ found Wilkerson's mental impairments to be non-severe, which is supported by substantial evidence, his use of the "grid rules" was appropriate.  *See Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) ("Use of the 'Grid Rules' is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity.").

**Third**, Wilkerson argues the ALJ did not properly consider the expert medical opinion of his treating physician, Dr. Deno Barroga, M.D.  Under the Social Security Regulations, opinions of treating physicians as to the nature and severity of a claimant's impairments are given controlling weight so long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  An ALJ may give less weight to a treating physician's opinion only when "there is good cause shown to the contrary . . ."  *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)).  An ALJ must perform a detailed analysis of the treating physician's opinion under the criteria set forth in the regulations before rejecting the opinion.  *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Those factors include the length of the treatment relationship, the nature and extent of the treatment relationship, the evidence supporting the opinion, and the specialty of the physician, among other considerations.  20 C.F.R. § 404.1527(d)(2)(i) and (ii).

In this case, the ALJ clearly stated his reasons for giving less weight to the opinion of Dr.

Barroga, citing *Newton v. Apfel* in his decision and undertaking a detailed analysis of Dr. Barroga's opinion. (Tr. 17-18). The ALJ noted Wilkerson first saw Dr. Barroga three days after filing for disability benefits, that Dr. Barroga completed a statement that Wilkerson was permanently disabled due to fibromyalgia on his first office visit without performing any tests or providing documentary support for that determination, and that Dr. Barroga prepared a handicap sticker for the Plaintiff's car on his second visit. (Tr. 18). The ALJ details the medical assessments of Plaintiff's two other treating physicians, Dr. John Carlson, M.D., and Dr. Gilbert Chou, M.D., and the assessments of the state agency medical consultants. (Tr. 14-18; 114-169). Further, Dr. Barroga's opinion regarding complete disability is undermined by his own recommendations that Plaintiff continue a home exercise program including swimming and treadmills on March 17 and July 10, 2006, and his notes that Plaintiff "swims, walks and does resistance training everyday." on July 24, 2006. (Tr. 171, 173, 199). Plaintiff's roommate, Mr. Michael Daniels, testified that Wilkerson gets himself something to eat during the day, and most of the time when he is awake he is "in bed watching TV or at his desk watching TV or just kind of messing around on his computer." (Tr. 274-75). The ALJ noted inconsistencies between the medical evidence, the testimony of Mr. Daniels, and Wilkerson's own testimony. (Tr. 15-17).

The absence of medical records relating to limitations on Plaintiff's ability to work, the testimony of Plaintiff's roommate, and inconsistencies stemming from Plaintiff's own testimony with respect to his daily activities provide a basis for rejecting Dr. Barroga's RFC assessment. *See, e.g., Greenspan v. Shalala*, 38 F.3d at 237; *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999); *see also Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (rejecting an "isolated, conclusory statement" of a treating physician when considered in conjunction with other

10

opinions, objective medical evidence and claimant's own testimony). Under the foregoing facts and circumstances, there is substantial evidence supporting the ALJ's rejection of Dr. Barroga's RFC assessment.

**Fourth**, Wilkerson argues the ALJ did not properly evaluate his credibility. "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted). The determination whether a claimant is able to work despite some pain "is within the province of the administrative agency and should be upheld if supported by substantial evidence." *Id*. Moreover, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). In the Fifth Circuit, an ALJ must give reasons for rejecting a claimant's subjective testimony only where the evidence clearly favors the claimant. *Id*.

In his decision, discussing Wilkerson's credibility, the ALJ found that Wilkerson testified to having panic attacks approximately twice a week and lasting 15 to 30 minutes, yet did not mention them during his psychological evaluation six weeks later, stating instead that he had been experiencing anxious feelings since 1993. (Tr. 16). Wilkerson claimed at the hearing that he could no longer spend time reading because it hurt his eyes and caused migraines, yet his roommate testified that he regularly spends time on the computer and made no mention of discomfort when completing tests during the psychological exam that called for reading. (Tr. 14, 16). The ALJ also noted that Wilkerson's weight gain of thirty pounds is uncommon for someone in constant, severe pain. (Tr. 17).

In formulating the RFC, the ALJ properly assessed Wilkerson's credibility, relying on

11

factors including inconsistencies between Wilkerson's course of treatment, his daily activities, the objective medical evidence, and the subjective testimony of Wilkerson and his roommate. (Tr. 15-19). The ALJ discussed Plaintiff's credibility with regard to both his alleged physical and mental limitations throughout his decision, finding Plaintiff's testimony was not credible regarding either. The credibility finding is supported by substantial evidence.

**RECOMMENDATION:**
For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 26th day of June, 2009

*[signature]*
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE
In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.